Filed 10/10/25  In re Sofia S. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re SOFIA S., A Person Coming Under the Juvenile Court Law. | B341519, B342725 (Los Angeles County Super. Ct. No. 22CCJP00812) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LORENA R., Defendant and Appellant. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Cristina Gutierrez Legaspi, Judge.  Affirmed (appeal No. B341519); conditionally reversed (appeal No. B342725).

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Lorena R. (Mother) appeals from the juvenile court's order suspending her overnight visits and conjoint counseling with her daughter Sofia at a hearing under Welfare and Institutions Code section 388[1] (appeal No. B341519) and a subsequent order terminating Mother's parental rights under section 366.26 (appeal No. B342725). Mother's sole contention on appeal is that the Los Angeles County Department of Children and Family Services (Department) and the court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and the California Indian Child Welfare Act (Cal-ICWA; Welf. & Inst. Code, § 224 et seq.).

Mother and Father (Valente S.) denied they had Indian ancestry, and the Department inquired of both maternal grandparents and the paternal grandmother, who stated they were not aware of any Indian ancestry. We agree with Mother with respect to the paternal relatives that the Department's failure to interview any extended family members other than the paternal grandmother did not satisfy the Department's duty of inquiry because it left unexplored a branch of Sofia's family tree—Father's paternal ancestry. The fact Father and the

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

paternal grandmother denied any Indian ancestry does not mean other extended family members, including the paternal grandfather and paternal aunts and uncles, would not have had meaningful information on whether Sofia had Indian ancestry. The Department therefore did not satisfy its duty to inquire of reasonably available extended family members with respect to the family's Indian ancestry, and substantial evidence does not support the juvenile court's finding that Sofia was not an Indian child. We conditionally reverse the juvenile court's order terminating Mother's and Father's parental rights and remand for the court and the Department to comply with the inquiry and notice provisions of ICWA and Cal-ICWA.

With respect to the maternal relatives, the Department's interviews with Mother and both maternal grandparents provided a more complete picture of the family's Indian ancestry on Mother's side. In light of our conditional reversal, we do not reach whether the Department and the court also violated ICWA and Cal-ICWA with respect to the maternal relatives. However, we note that on remand the Department continues to have an obligation to interview reasonably available extended family members under section 224.2, subdivision (b). We also reject the Department's argument that Mother forfeited her challenge to the adequacy of the Department's ICWA inquiry by not objecting in the juvenile court.

Because our order requires that an ICWA inquiry be performed, and Mother raises no other issues with respect to the court's October 16, 2024 order suspending Mother's overnight visits and conjoint counseling with Sofia, we affirm that order.

3

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Dependency Proceedings*

On April 28, 2022 the juvenile court sustained the allegations in a petition under section 300, subdivisions (b)(1) and (j), as amended, with respect to then-seven-year-old Sofia that Mother had a history of substance abuse and was a current user of amphetamine, methamphetamine, and marijuana, which rendered her unable to provide regular care for Sofia, and on February 9, 2022 Mother was under the influence of illicit drugs while Sofia was in her care. The court also sustained the allegations that Father[2] had a history of substance abuse, including methamphetamine, and he was a current abuser of marijuana; further, Sofia's half-siblings were former dependents of the juvenile court and Father's reunification services had been terminated due to Father's substance abuse. The court declared Sofia a dependent of the court and removed her from Mother's and Father's custody. The court granted the parents family reunification services and ordered monitored visitation for the parents three times a week for three hours each visit. Sofia was placed with the maternal grandmother (Alma G.), where she remained during the dependency proceeding.

On October 16, 2023, at the 18-month review hearing, the juvenile court terminated Mother's reunification services and set the matter for a selection and implementation hearing

---

[2]    Father is not a party to these appeals.

4

(§ 366.26).[3]  At the hearing the court ordered Mother and Sofia to undergo conjoint counseling and allowed Mother to have overnight visits with Sofia in the maternal grandmother's home.

In August 2024 the Department filed a section 388 petition requesting the juvenile court suspend its order for conjoint counseling and require that Mother's visits be monitored.  The Department argued that Sofia did not want to participate in conjoint counseling and felt unsafe with Mother, and further, the therapist had not recommended conjoint counseling.  On October 16, 2024 the court granted the petition in part, suspending conjoint counseling and overnight visits, but allowing unmonitored day visits to continue.

At the December 11, 2024 selection and implementation hearing, the juvenile court found by clear and convincing evidence that Sofia was adoptable and no exceptions to termination of parental rights applied.  The court terminated Mother's and Father's parental rights, found adoption was the appropriate permanent plan, and designated the maternal grandmother as the prospective adoptive parent.

Mother timely appealed from the October 16, 2024 order suspending conjoint counseling (case No. B341519) and the December 11, 2024 order terminating her parental rights (case No. B342725).

---

[3]     The juvenile court previously terminated reunification services for Father.

5

B. *The Department's ICWA and Cal-ICWA Inquiry*

On April 27, 2022 Mother and Father each filed a parental notification of Indian status (ICWA-020) form stating none of the listed factors indicating Indian ancestry applied. Mother and Father denied having Indian ancestry at other times during the dependency proceeding. The maternal grandmother and maternal grandfather (Victor R.) also denied having any Indian ancestry. The juvenile court inquired of Mother and the maternal grandmother at multiple hearings, including the initial section 366.26 hearing on August 13, 2024, and they consistently responded that they were not aware of anyone in the family having Indian ancestry. Mother told the social worker she had two sisters (Jacqueline and Alma R. (Alma)) and two brothers (Michael and Victor), and she had good relationships with them. Alma told the social worker that she picked up Sofia from school and sometimes took care of Sofia when maternal grandmother had to work. Alma also told the social worker that Michael was designated as a substitute caregiver for Sofia in the event the maternal grandmother became incapacitated or died. Further, Jacqueline had a daughter who was in the same class as Sofia. On February 28, 2022 the social worker spoke with Jacqueline about her relationship with Mother and Mother's use of alcohol and drugs. The Department did not inquire of Alma or Jacqueline about Sofia's Indian ancestry.

Father told the social worker that he had six siblings: Ruben, Dalia, Maria, Juan Manuel, Dario, and Luis. He had a good relationship with them and had regular contact with all of them except Ruben (who was deported to Mexico and maintained "sporadic contact"). In November 2022, as part of its due diligence search to locate Father (who had not been in contact

6

with the Department since July 2022), the Department mailed letters to four of the siblings (Ruben, Dalia, Maria, and Juan Manuel), requesting they contact the Department to provide information about Father's whereabouts. As of February 2024, however, none of the siblings had contacted the Department. Father also had regular contact with his parents. Father had been employed in his father's business "on and off" for the prior 15 to 20 years, and he did side jobs with his uncle (the paternal great-uncle), who was a contractor. Father also had two other children (Sofia's half-siblings), Emily and Valente. The social workers also described multiple cousins of Sofia in reports, including Jacqueline's children and Alma's daughter.

At the April 28, 2022 jurisdiction and disposition hearing the juvenile court stated it had no reason to know or believe ICWA applied. The court ordered the Department to "continue its efforts to interview any appropriate relatives." At the December 11, 2024 section 366.26 hearing the court again inquired of Mother and the maternal grandmother as to whether the family had any Indian ancestry, to which they responded no. The court found, based on Mother's and maternal grandmother's responses and the Department's continued inquiry, that Sofia was not an Indian Child, and ICWA does not apply.

## DISCUSSION

A. *ICWA and Cal-ICWA Inquiry and Notice Requirements*

Congress enacted ICWA in 1978 "in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers

of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*In re Dezi C.* (2024) 16 Cal.5th 1112 (*Dezi C.*).)  To address this concern, "ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards."  (*Id.* at p. 1129.)  In 2006 the Legislature passed Senate Bill No. 678 (2005-2006 Reg. Sess.), which mandated compliance with ICWA in all Indian child custody proceedings in an effort to increase compliance with ICWA.  (*Dezi C.*, at pp. 1130-1131.)

In dependency proceedings, ICWA and Cal-ICWA require that where the court knows or has reason to know an Indian child is involved, notice must be given to the relevant tribes. (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 5 (*Isaiah W.*); Cal. Rules of Court, rule 5.481(c)(1).)  The notice requirement is at the heart of ICWA because it "enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding."  (*Isaiah W.*, at p. 5; accord, *Dezi C., supra*, 16 Cal.5th at p. 1144, fn. 15.)

The juvenile court and child welfare agency "have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child *is or may be* an Indian child."  (*Dezi C., supra*, 16 Cal.5th at pp. 1131-1132, quoting § 224.2, subd. (a), italics added; see *Isaiah W., supra*, 1 Cal.5th at p. 9; Cal. Rules of Court, rule 5.481(a).)  The duty to inquire begins with the initial contact with the reporting party, and it continues with the child welfare agency's "first contact with the child and each family member,

including extended family members." (§ 224.2, subd. (b)(1); see *Dezi C.*, at p. 1132.) The duty of inquiry continues throughout the dependency proceedings. (*Dezi C.*, at p. 1132; *In re J.C.* (2022) 77 Cal.App.5th 70, 77; see § 224.2, subd. (a).)

Under section 224.2, subdivision (b)(2), once a child is placed into the temporary custody of a "county welfare department," the duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (See *Dezi C., supra*, 16 Cal.5th at p. 1132; Cal. Rules of Court, rule 5.481(a)(1) [the child welfare agency "must ask . . . extended family members . . . whether the child is or may be an Indian child"]; *In re Y.W.* (2021) 70 Cal.App.5th 542, 551-552 [§ 224.2, subd. (b)(2), "requires the child protective agency to ask . . . ""extended family members"""" whether the child is or may be an Indian child].) An "extended family member," if not defined by the law or custom of the child's Indian tribe, includes "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) [adopting same definition].)

The duty of further inquiry is triggered under section 224.2, subdivision (e), "[i]f the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child." (See *Dezi C., supra*, 16 Cal.5th at p. 1132; *In re*

*T.R.* (2024) 107 Cal.App.5th 206, 219; Cal. Rules of Court, rule 5.481(a)(4).)  Further inquiry includes "(1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe." (*Dezi C.*, at pp. 1132-1133, citing § 224.2, subd. (e)(2)(A)-(C).)

We review the juvenile court's factual finding that ICWA does not apply for substantial evidence.  (See § 224.2, subd. (i)(2) ["If the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."]; *In re Wendy C.* (Oct. 9, 2025, B344660) __ Cal.App.5th __ <https://courts.ca.gov/opinions> [p. 10] (*Wendy C.*); *In re C.R.* (2025) 112 Cal.App.5th 793, 800 ["We generally review the juvenile court's factual finding that ICWA does not apply for substantial evidence."]; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401 ["'"[w]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order"'"].)  "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C., supra*, 16 Cal.5th at p. 1141; accord, *Wendy C.,* at pp. 10-11; *In re C.R.,* at. p. 800; see *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101 ["'On a well-developed record, the court has relatively broad discretion

10

to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case."].)[4]

B.     *Substantial Evidence Does Not Support the Juvenile Court's Finding ICWA Did Not Apply*

Mother contends the Department failed to conduct an adequate ICWA inquiry because it failed to inquire of two maternal aunts and two maternal uncles (Mother's siblings), six paternal aunts and uncles (Father's siblings), multiple maternal cousins (including Jacqueline's and Alma's children), paternal great-uncle (for whom Father did odd jobs), and two paternal half-siblings (Emily and Valente).[5]

---

[4]     The Supreme Court in *In re Kenneth D., supra*, 16 Cal.5th at page 1101 observed that some Courts of Appeal had applied a "standard substantial evidence test, 'which requires [the appellate court] to determine if reasonable, credible evidence of solid value supports the court's ICWA finding," but "other courts have used a hybrid standard, reviewing for substantial evidence whether there is reason to know a minor is an Indian child, and reviewing a finding of due diligence and proper inquiry for abuse of discretion." *Kenneth D.* did not decide which standard applied because it was undisputed that the initial ICWA inquiry was inadequate. (*Id*. at pp. 1101-1102.)

[5]     Mother does not contend the Department failed to interview the paternal grandfather (for whom Father had worked over the prior 15 to 20 years), although it does not appear from the record that he was interviewed. The Department likewise does not mention the paternal grandfather in its respondent's brief. On remand, the Department should determine whether to inquire of paternal grandfather as part of its duty of inquiry under ICWA.

11

The Department responds that the repeated denials of Indian ancestry by Mother, the maternal grandparents, and the paternal grandmother satisfied the Department's duty of inquiry under ICWA, relying on the language in *Dezi C., supra*, 16 Cal.5th at page 1140, that ICWA "does not require reversal in all cases in which every possible extended family member has not been asked about the child's Indian ancestry." But the Supreme Court in *Dezi C.* clarified in the next sentence, "[S]ection 224.2 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Ibid.*)

The record shows, at a minimum, that five of the six paternal aunts and uncles were reasonably available, and the Department could have easily contacted at least some of them to inquire about the family's Indian ancestry. As discussed, Father identified his six siblings and stated he had regular contact with all of them, except Ruben, with whom Father had "sporadic contact." Mother identified her two sisters and two brothers and stated she had a good relationship with all of them. Accordingly, it is reasonable to infer that Mother and Father could have provided contact information for all the aunts and uncles. Moreover, the social worker spoke with Jacqueline and Alma but never inquired whether the family had Indian ancestry. The Department was also aware that Michael was the backup caregiver for Sofia. It is undisputed that the aunts and uncles are "extended family members" under section 224.1,

subdivision (c), and 25 United States Code section 1903(2).[6]  Yet the Department never contacted any of these family members or requested Mother, Father, or the maternal grandmothers provide contact information for them.

The Department argues that as part of its due diligence search for Father in November 2022, it attempted to contact four of Father's siblings (Juan, Ruben, Maria, and Dalia) by sending letters to them asking about Father's whereabouts, but none of them responded to the letters.  The fact the four paternal aunts and uncles did not respond to the Department's letters does not mean they could not be contacted by phone or email, which presumably was how Father contacted them.  Nor does it mean the four family members would not respond to an inquiry about the family's ancestry, in contrast to an inquiry as to Father's whereabouts.

Moreover, we reject the Department's contention that "there is nothing in the record to demonstrate that these relatives would have provided any meaningful information above and beyond what had already been provided by the maternal and paternal grandmothers."  This position ignores the statutory

---

[6]    We agree with the Department that great-uncles and step-siblings are not extended family members under section 224.1, subdivision (c), and 25 United States Code section 1903(2).  In some circumstances a child welfare agency has a duty to inquire of non-extended family members under section 224.2, subdivision (b)(2), which requires an inquiry of "others who have an interest in the child."  (See *Dezi C., supra*, 16 Cal.5th at p. 1132.)  But Mother has not argued or shown the paternal great-uncle or step-siblings have an interest in the child (or there is another basis for inquiry).

mandate that the child welfare agency inquire of extended family members with respect to a child's Indian ancestry. (See § 224.2, subd. (b); *Dezi C., supra*, 16 Cal.5th at p. 1132; *In re Y.W., supra*, 70 Cal.App.5th at pp. 551-552.) Further, the Department would not know whether the extended family members have meaningful additional information without asking them. "'[O]ral transmission of relevant information from generation to generation and the vagaries of translating from Indian languages to English combine to create the very real possibility that a parent's or other relative's identification of the family's tribal affiliation is not accurate.'" (*Dezi C.*, at p. 1146; see *In re T.G.* (2020) 58 Cal.App.5th 275, 289.) And here, given that all the siblings were in contact with Mother and Father, it would be "a rather simple task to ask those family members about Indian ancestry in this process," which inquiry would be "'slight and swift.'" (*Dezi C.*, at p. 1143.)[7]

Finally, the Department contends we should consider on appeal that Mother failed to object to the juvenile court's ICWA findings, relying on *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1012, disapproved of on another ground by *Dezi C., supra*, 16 Cal.5th at p. 1152, fn. 18.) The court in *Ezequiel* concluded that on appeal from an order terminating parental rights, an appellate court should take into account "whether an objection was made below to the adequacy of an ICWA inquiry," explaining

---

[7]    We agree with the Department, however, that it is unlikely the two identified maternal cousins would have additional information that their mothers (Jacqueline and Alma) or maternal grandparents did not have.

that ICWA "requires all counsel to critically review the agency's ICWA inquiry at every stage of the proceedings and to alert the juvenile court if an inquiry is inadequate." (*Ibid.*)

Although we agree that a parent should raise the inadequacy of an ICWA inquiry in the juvenile court, the parent's failure to object in the juvenile court is not relevant to whether a child is an Indian child or whether the Department has performed an adequate inquiry. (See *In re G.H.* (2022) 84 Cal.App.5th 15, 29 [a parent may raise lack of ICWA compliance for the first time on appeal because "[a] tribe's rights under ICWA, and similarly under related state law, are 'meaningless if the tribe has no notice that the action is pending'"]; *In re A.R.* (2022) 77 Cal.App.5th 197, 204 ["the law allows a parent to raise failure to comply with ICWA on appeal, even if the issue was not raised in the trial court, because '[t]he parent is in effect acting as a surrogate for the tribe in raising compliance issues on appeal'"]; *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal from an order entered at any hearing in which the juvenile court determined that ICWA was satisfied or does not apply"].)

The Department's position—supporting affirmance of an order terminating parental rights despite an inadequate ICWA inquiry where a parent fails to object in the juvenile court— would prejudice the Indian tribe, which has a "right to intervene at any point in the proceeding" (25 U.S.C. § 1911(c)) but will not be able to exercise that right unless it receives notice that the subject of a dependency proceeding may be an Indian child. As the Supreme Court explained in *Isaiah W., supra,* 1 Cal.5th at

15

page 13, "Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children," and further, "ICWA's notice requirements are 'intended to protect the interests of Indian children and tribes despite the parents' inaction.'" The court concluded, "We agree with the majority view among the Courts of Appeal that 'given the court's continuing duty throughout the dependency proceedings to ensure the requisite notice is given [citation], and the protections the ICWA affords Indian children and tribes, the parents' inaction does not constitute a waiver or otherwise preclude appellate review.'" (*Ibid.*) Further, as the Supreme Court underscored in *Dezi C.*, we "'cannot assume a parent's interest necessarily aligns with the tribe's interest.' [Citation.] "'The parents or Indian custodian may be fearful to self-identify, and social workers are ill-equipped to overcome that by explaining the rights a parent or Indian custodian has under the law.'"" (*Dezi C., supra*, 16 Cal.5th at p. 1146.)

Accordingly, substantial evidence does not support the juvenile court's findings that the Department satisfied its duty of inquiry under section 224.2, subdivision (b), and that ICWA does not apply. (*Wendy C., supra*, __ Cal.App.5th __ <https://courts.ca.gov/opinions> [pp. 18-19] [juvenile court erred in finding ICWA did not apply where Department limited inquiry to parents and a single family member on the maternal side and two family members on the paternal side of the family despite other available extended family members who could have been contacted]; *In re J.C., supra*, 77 Cal.App.5th at p. 74 ["the court's finding ICWA did not apply" was not supported by substantial evidence where the court "failed to ensure the Department fulfilled its duty of inquiry under section 224.2, subdivision (b)"];

16

*In re Antonio R.* (2022) 76 Cal.App.5th at p. 432 [court's finding ICWA did not apply was erroneous where Department failed to inquire of child's extended family members about possible Indian ancestry, and court failed to ensure the Department satisfied its duty of initial inquiry].)[8]

We therefore conditionally reverse the order terminating Mother's and Father's parental rights with directions for the Department and the juvenile court to comply with ICWA and Cal-IWCA. (See *Dezi C., supra*, 16 Cal.5th at p. 1152 ["[A] judgment [must] be conditionally reversed when error results in an inadequate Cal-ICWA inquiry. It is only by conditionally reversing that we can ascertain whether error in the inquiry is prejudicial."].)

However, there is no reason to disturb the juvenile court's October 16, 2024 order suspending conjoint counseling and Mother's overnight visits while the Department performs its further ICWA investigation, because if new information is discovered showing Sofia is an Indian child, the relevant tribe and Indian custodian will have a right to intervene (§ 224.4) and to petition the court to invalidate any action taken in violation of ICWA. (§ 224, subd. (h); Cal. Rules of Court, rule 5.487(a).) Until that time, the juvenile court has authority to protect Sofia by

---

[8] As discussed, because we conclude substantial evidence does not support the juvenile court's finding that ICWA does not apply based on the Department's failure to inquire of multiple paternal extended family members, we do not reach whether the juvenile court would have abused its discretion in finding ICWA did not apply had the Department interviewed all four grandparents, and all four denied any Indian ancestry.

limiting Mother's visitation and suspending the order for conjoint counseling.  Mother has not cited any authority to the contrary.

## DISPOSITION

The March 10, 2025 order terminating Mother's and Father's parental rights is conditionally reversed.  We direct the Department and the juvenile court to comply with the inquiry and notice provisions of ICWA and Cal-ICWA consistent with this opinion.  If the court finds Sofia is an Indian child, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and Cal-ICWA.  If not, the original section 366.26 order shall be reinstated.  The December 16, 2024 order granting the Department's section 388 petition in part is affirmed.

FEUER, J.

We concur:

MARTINEZ, P. J.

STONE, J.

18